## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| BOLD ALLIANCE, et al., | |
| Plaintiffs, | **4:20-cv-00059-BMM** |
| vs. | |
| U.S. DEPARTMENT OF THE INTERIOR, et al., | **ORDER** |
| Defendants, | |
| and | |
| TRANSCANADA KEYSTONE PIPELINE, LP, a Delaware limited partnership, and TC ENERGY CORPORATION, a Canadian Public Company, | |
| Defendant-Intervenors. | |

## INTRODUCTION

Bold Alliance, Center for Biological Diversity, Friends of the Earth, Natural Resources Defense Council, and Sierra Club (collectively, "Plaintiffs") brought this action against various government agencies and agents in their official capacities ("Federal Defendants"). Plaintiffs allege that the U.S. Bureau of Land

Management ("BLM") violated the National Environmental Policy Act ("NEPA"),

the Endangered Species Act ("ESA"), the Administrative Procedure Act ("APA"),

the Mineral Leasing Act ("MLA"), and the Federal Land Policy and Management

Act ("FLPMA") when BLM issued a right-of-way ("ROW") and temporary use

permit to Defendant-Intervenors TransCanada Keystone Pipeline, LP and TC

Energy Corporation (collectively, "TC Energy") to construct a segment of the

Keystone XL oil pipeline ("Keystone") across 44.4 miles of federal land in

Montana administered by BLM.

## BACKGROUND

Federal Defendants filed the administrative record with the Court on

November 19, 2020. (Doc. 48). The submitted record includes 15,000 pages of

material in addition to thousands of pages of environmental analysis conducted

pursuant to NEPA in 2011, 2014, and 2019. (Doc. 54 at 1).

Plaintiffs filed a Motion to Supplement and Complete the Administrative

Record on November 24, 2020. (Doc. 51). Plaintiffs seek supplementation with

three documents they argue are necessary to show BLM issued the ROW without

considering all relevant factors and to explain technical terms and complex subject

matter. (Doc. 52 at 1). Plaintiffs further seek to complete the administrative record

with documents related to BLM's issuance of a Notice to Proceed with

2

construction on a segment of the pipeline within the ROW. *See id.* TC Energy and

Federal Defendants oppose the Motion. (Docs. 53, 54).

## ANALYSIS

Plaintiff's claims fall within the APA review standard. A court must set

aside agency action that is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A reviewing court

must determine whether the agency considered the relevant factors and articulated

a rational connection between the facts found and the choice made. *Baltimore Gas*

*& Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 105 (1983). The court must

examine the agency's "whole record" when conducting its review. *Thompson v.*

*U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). The whole record includes

"all documents and material directly or indirectly considered by agency

decisionmakers and . . . evidence contrary to the agency's position." *Id.*

A court reviewing an agency action sits in the same position as an appellate

court of review. "[T]he focal point for judicial review should be the administrative

record already in existence, not some new record made initially in the reviewing

court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also San Luis & Delta-*

*Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602–03 (9th Cir. 2014). There are,

however, certain "narrow exceptions to this general rule." *Lands Council v.*

*Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005). These exceptions include court-

ordered supplementation or completion of the administrative record. These narrow

exceptions serve to "explain the record where a failure to do so might frustrate

effective judicial review." *Envt'l Def. Fund v. Costle*, 657 F.2d 275, 286 n.36

(D.C. Cir. 1981).

A court may supplement the administrative record with extra-record

evidence: "(1) if admission is necessary to determine whether the agency has

considered all relevant factors and has explained its decision, (2) if the agency has

relied on documents not in the record, (3) when supplementing the record is

necessary to explain technical terms or complex subject matter, or (4) when

plaintiffs make a showing of agency bad faith." *Lands Council*, 395 F.3d at 1030

(internal quotation marks and citation omitted). The Ninth Circuit has emphasized

that these four supplementation exceptions should be approached "with caution,

lest 'the exception . . . undermine the general rule.'" *Jewell*, 747 F.3d at 603

(quoting *Lands Council*, 395 F.3d at 1030).

A court may order the completion of the administrative record in narrow

circumstances. The government's designation of an administrative record is

entitled to a presumption of completeness. *Indigenous Envtl. Network v. U.S. Dep't

of State*, No. 17-cv-29-GF-BMM, 2018 WL 1796217, at *2 (D. Mont. Apr. 16,

2018). A plaintiff may rebut this presumption with clear evidence against

completeness, such as the identification of "allegedly omitted material with

4

sufficient specificity" and "reasonable, non-speculative grounds for the belief that the alleged documents were considered by the agency and not included in the record." *Id.* (quoting *Oceana, Inc. v. Pritzker*, 2017 WL 2670733 at *2 (N.D. Cal. 2017)). A plaintiff also can show that the agency "applied the wrong standard in compiling the record." *Id.* A plaintiff does not need to show bad faith or improper motive.

## I.   Pipeline Coating Documents

Plaintiffs seek to supplement the record with two documents relating to potential degradation of the coating on the pipes that will be used to construct Keystone. (Doc. 52 at 6). First is a technical study of pipeline coating degradation ("Coating Study") coauthored by TC Energy scientists and published in the Institute of Corrosion's Corrosion Management Magazine in early 2020. *Id.* at 8–10. Second is a report by Accufacts, Inc. ("Accufacts Report") commissioned by Plaintiffs examining the Coating Study and describing the significance of its results. Plaintiffs argue that these two documents are necessary supplements to the administrative record both to "determine whether the agency has considered all relevant factors and has explained its decision" and to "explain [the] technical terms [and] complex subject matter" underlying Plaintiffs' claims. *Lands Council*, 395 F.3d at 1030 (citation omitted); *see also Ass'n of Pac. Fisheries v. EPA*, 615 F.2d 794, 811 (9th Cir. 1980) (holding post-decision documents are admissible to

5

"understand[] the problem faced by the Agency and the methodology it used to resolve it").

Keystone construction activities have been delayed several times. TC Energy has left pipe segments to be used in the construction of Keystone outside and exposed to the elements for a number of years. Plaintiffs argue that such exposure to sunlight and other weathering may impair protective coatings on those segments that are intended to prevent corrosion and pipeline failure. (Doc. 52 at 8).

Plaintiffs raised concerns regarding this issue in 2017 in a letter to the State Department, BLM, and other agencies involved in Keystone approvals. *Id.* at 9, 13 (citing Doc. 48, BLM-11208 to -11209, -11269 to -11271, -11275). Plaintiffs go on to allege that BLM and other agencies failed to further "develop a record on this point." *Id.* at 9. Federal Defendants argue that Plaintiffs' concerns on the record themselves represent consideration of the coating issue and function to complete the administrative record. (Doc. 54 at 13). Federal Defendants cannot point to other documentation of the coating issue and its implications for pipeline functioning in the record. Federal Defendants further cannot point to technical analysis or any explanation of the coating issue on the record.

The concerns raised by Plaintiffs regarding coating degradation in the record alone fail to provide sufficient information for the Court to understand the issue as well as the implications of that issue for Keystone. More information is needed to

understand whether coating degradation was a relevant factor that BLM should have considered when it approved the ROW. A court may supplement the administrative record if such supplementation is "necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Lands Council*, 395 F.3d at 1030. The Coating Study is exactly the kind of information that exception is meant to capture. The Coating Study indicates that TC Energy studied pipe segments for sunlight and weathering damage starting in August 2018. (Doc. 52 at 13–14). The Coating Study also provides the results of that research. *Id.* The Coating Study will provide the Court with the information necessary to understand coating degradation of the particular pipe segments relevant to the project, and whether BLM should have considered coating degradation as a relevant factor in its analysis of the ROW.

The Accufacts Report provides explanation and analysis of the technical details raised in the Coating Study. A court may supplement the administrative record if such supplementation is "necessary to explain technical terms or complex subject matter." *Lands Council*, 395 F.3d at 1030. The Coating Study is a technical document published in a trade journal. Its contents rely on technical terms and an understanding of complex subject matters. The Accufacts Report provides context for the Coating Study results that are necessary to provide adequate judicial review. The Accufacts Report, for example, explains types of coatings, how

different types of coating interact with each other as well as other corrosion control measures, and how sunlight and other types of weathering can degrade coatings. (Doc. 52 at 14–15). Administrative record supplementation with the Accufacts Report remains appropriate to explain the identified technical terms and complex subject matter. *Lands Council*, 395 F.3d at 1030.

Federal Defendants argue that Plaintiffs should have submitted both the Coating Study and the Accufacts Report during the administrative process. (Doc. 54 at 9–10). But as Federal Defendants concede, the Coating Study itself was not publicly available before the ROW. *Id.* The Accufacts Report provides explanation and analysis of the technical details raised in the Coating Study, so it similarly was not available before the ROW. As noted above, Plaintiffs *did* raise the issue of pipeline degradation during the administrative process. (Doc. 52 at 9, 13 (citing Doc. 48, BLM-11208 to -11209, -11269 to -11271, -11275)). BLM did not conduct further technical analysis or offer any explanation of the issue on the record. As a result, the Court must supplement the record with such technical analysis in order to fully understand the issue raised and rule on whether BLM should have considered it as a relevant factor.

Plaintiffs have shown a hole in the administrative record exists. There are no documents beyond Plaintiffs' own comments regarding the issue of pipeline coating degradation. Supplementation is necessary because the existing

8

administrative record is so inadequate that it would frustrate judicial review regarding whether BLM failed to consider the factor of pipeline coating degradation. Supplementation is necessary to examine whether "an EIS has neglected to mention a serious environmental consequence . . . or otherwise swept stubborn problems or serious criticism under the rug." *Hausrath v. U.S. Dep't of Air Force*, No. 19-cv-103-CWD, 2020 WL 5848094, at *7 (D. Idaho Oct. 1, 2020) (quoting *Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993)).

The Court will grant the motion to supplement the administrative record with the Coating Study and the Accufacts Report because they are not only relevant—they are necessary to review the full administrative record before the Court. The administrative record as submitted is so inadequate that it would frustrate judicial review of the factors BLM considered in reaching its decision.

## II.    Oil Spill Response Report

Plaintiffs also seek to supplement the record with a report by Dr. Jeffrey Short reviewing TC Energy's oil spill response plans for Keystone ("Short Report"). (Doc. 52 at 16). Plaintiffs argue that the Short Report is necessary "to determine whether the agency has considered all relevant factors and has explained its decision" and to "explain technical terms or complex subject matter." *Lands Council*, 395 F.3d at 1030. Plaintiffs specifically indicate the Short Report will

9

provide analysis of whether the oil spill response plan adequately considers the unique qualities of diluted bitumen ("dilbit"). (Doc. 52 at 16).

The Court previously invalidated a 2014 EIS in part for failure to address new information showing that dilbit "presents more challenges for cleanup response than other types of oil moved by pipeline." *Indigenous Envtl. Network*, 347 F. Supp. 3d 561, 582 (D. Mont. 2018). Plaintiffs note, however, that the 2019 EIS now "acknowledges dilbit spills behave differently, and that conventional cleanup tactics are inadequate for detecting and containing submerged dilbit spills." (Doc. 52 at 17–18). Federal Defendants point to numerous places in the administrative record where the unique properties of dilbit were considered. (Doc. 54 at 15–16). Plaintiffs argue that the EIS fails to make corresponding changes to the underlying spill response plan to account for dilbit characteristics. (Doc. 52 at 18). Plaintiffs urge the Court to supplement the administrative record with the Short Report to provide an evaluation of the importance of factoring dilbit into the emergency response plan. *Id.* However, Federal Defendants point to an updated emergency response plan that included consideration of unique dilbit properties. (Doc. 54 at 16).

Plaintiffs fail to meet their burden for supplementation of the administrative record regarding the Short Report. Federal Defendants have indicated numerous places in the record where the unique qualities of dilbit were considered including

in the emergency response plan. Plaintiffs fail to show what hole in the administrative record the Short Report would fill. Plaintiffs similarly fail to show what technical information the Short Report would clarify and instead indicate that the report explains existing materials in the record. (Doc. 52 at 19). Plaintiffs appear to have commissioned this report instead to attack the merits of BLM's measures to address environmental issues. The "distinction between an affidavit that 'explains' complex and technical material" compared to "an affidavit that characterizes the record with new expert opinion" is "critical" because the "former is allowed where the latter is not." *Alsea Valley All. v. Evans*, 143 F. Supp. 2d 1214, 1217 (D. Or. 2001). The Court will deny the motion to supplement the administrative record with the Short Report because the administrative record is already adequate to examine whether BLM considered the unique qualities of dilbit as a factor in its analysis.

## III.   Other materials

Plaintiffs finally seek the completion of what they allege is an incomplete administrative record. Plaintiffs specifically seek the addition of documents relating to BLM's 2020 Notice to Proceed issued to TC Energy. (Doc. 52 at 20). Plaintiffs note that BLM's notice provided TC Energy with permission to proceed with construction of the border segment of the pipeline on federal lands. *Id.* at 22. Plaintiffs identify a specific set of documents related to the 2020 Notice to Proceed

missing from the submitted administrative record that they argue would complete that record. *See id.* at 20–21.

Federal Defendants argue that BLM's 2020 Notice to Proceed is not a reviewable action. (Doc. 54 at 21). Federal Defendants represent that they will nonetheless "prepare a record for the notice to proceed" in order to litigate their arguments at the summary judgment stage. *Id.* at 24. The Court will therefore deny this part of Plaintiffs' Motion to Complete without prejudice. Should Federal Defendants fail to prepare and submit those documents as they have represented, Plaintiffs may renew their motion with regard to BLM's 2020 Notice to Proceed.

## ORDER

Accordingly, **IT IS ORDERED** that Plaintiffs' Motion to Supplement and Complete the Administrative Record (Doc. 51) is:

- **GRANTED IN PART** with regard to the Coating Study and Accufacts Report;

- **DENIED IN PART** with regard to the Short Report; and

- **DENIED WITHOUT PREJUDICE** with regard to the 2020 Notice to Proceed documents.

Dated the 17th day of December, 2020.

Brian Morris, Chief District Judge
United States District Court